UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**THE LODGE AT BIG SKY, LLC**,<br><br>Debtor. | Case No. **10-62229-11** |
| In re<br><br>**THE LODGE AT BIG SKY MANAGEMENT COMPANY, LLC**,<br><br>Debtor. | Case No. **10-62230-11** |

*MEMORANDUM of DECISION*

At Butte in said District this 8th day of April, 2011.

In the above-referenced Chapter 11 bankruptcy cases, after due notice, the Court held a hearing on April 4, 2011, in Butte on: (1) the Debtor's Motion for Substantive Consolidation filed November 16, 2010, found at docket entry no. 26 in Case No. 10-62229 and docket entry no. 30 in Case No. 10-62230; (2) First Financial Bank, N.A.'s Motion for Adequate Protection filed December 23, 2010, at docket entry no. 34 in Case No. 10-62229 and filed December 30, 2010, at docket entry no. 41 in Case No. 10-62230; (3) the United States Trustee's Motion to Dismiss filed January 20, 2011, at docket entry no. 51 in Case No. 10-62229; (4) the United States Trustee's Motion to Convert to Case Under Chapter 7 filed January 20, 2011, at docket entry no. 52 in Case No. 10-62229; (5) First Financial Bank, N.A.'s Joinder in the United States

1

Trustee's Motion to Dismiss or in the alternative, to Convert to Case Under Chapter 7; (6) The Lodge at Big Sky, LLC's Motion to Reject Executory Contract filed February 1, 2011, at docket entry no. 60; and (7) the United States Trustee's Motion for Order Directing Appointment of Chapter 11 Trustee filed February 1, 2011, in Case No. 10-62230. James A. Patten of Billings, Montana appeared at the hearing on behalf of The Lodge at Big Sky, Inc. ("Lodge"); Edward A. Murphy of Missoula, Montana appeared at the hearing on behalf of The Lodge at Big Sky Management Company, LLC ("Management"); Daniel P. McKay of Great Falls, Montana appeared on behalf of the United States Trustee ("UST"); Benjamin P. Hursh of Missoula, Montana appeared on behalf of First Financial Bank, N.A. ("First Financial"); and William M. Kebe of Butte, Montana appeared at the hearing on behalf of Lauren Quackenbush ("Lauren"). Scott Miller, Jeffrey Quackenbush and Lawrence Rezentes testified. The Debtors' Exhibits 1, 2, 3, 4, 5, 6, 7 and 8, First Financial's Exhibit 4, 5, 6, 7, 8, 10 and 11, and the UST's Exhibits C, G and H were admitted into evidence without objection. At the beginning of the hearing, counsel for First Financial withdrew the Motion for Adequate Protection filed December 30, 2010, at docket entry no. 41 in Case No. 10-62230. This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law with respect to many of the remaining matters discussed above.

BACKGROUND

Jeffrey Quackenbush ("Quackenbush") is the managing member of Lodge and Management. Lodge and Management are single member limited liability companies. In 2007, Quackenbush, through Lodge, purchased real estate in Big Sky, Montana, that was operated as a hotel. The hotel was comprised of 90 separate condominium units. Five of the condominium

2

units are owned by third parties and it was not clear from the evidence whether Lodge sold the five condominiums or whether the condominiums were sold prior to Lodge's purchase of the 85 condominium units it now owns. The foregoing fact is not important as it is undisputed that Lodge owned 85 of the condominium units on its petition date.

Quackenbush, through Lodge, operated the 85 condominium units as a hotel from 2007 to August 2008. During that time, Lodge set up accounts with vendors, such as ALSCO. In August 2008, Quackenbush formed Management and shortly thereafter, Management took over operations of Lodge's 85 condominium units and the other five condominium units owned by third parties.

Management derives its income from rental of the 90 condominium units. According to Quackenbush. Management is supposed to pay all expenses attributable to the 90 condominium units except real estate taxes and debt service on the units, including Lodge's notes. Lodge's sole source of income is supposed to be some portion of the net rental revenues Management receives from Lodge's 85 condominium units. Quackenbush testified that he does not have any formal written management agreement between Lodge and Management, and it is not clear whether Management has any written agreement with the other five unit owners. What is clear is that Management has not paid anything to Lodge in sometime.

Scott Miller ("Miller") is the general manager of ALSCO. Miller testified that ALSCO has provided laundry services to Lodge and is familiar with Lodge's account with ALSCO. Miller was not aware of Management's existence and thought that his company's dealings were solely with Lodge. The Debtors' Exhibits 3 and 4, 5 and 6, and 7 and 8 also show that vendors, such as House of Clean, Big Sky County Water & Sewer District No. 363 and American Express,

with whom Lodge had accounts prior to August of 2008, continued to send invoices to Lodge, even though operations of the condominiums had supposedly been taken over by Management. According to Quackenbush, the only vendor or creditor that knew of Management and its separate existence was Saunders Outdoor Advertising, Inc. All other creditors or vendors believed they were dealing with Lodge, even when said entities were arguably doing business with Management.

Lodge's schedules show that it has assets valued at $3,541,681.45, consisting of the condominium units valued at $3.5 million, cash of $721.45, various items of office equipment, furnishings and supplies valued at $35,230, and machinery, fixtures, equipment and supplies used in business valued at $5,730. Lodge has a total debt of $11,543,618.42. Lodge's Statement of Financial Affairs shows Lodge had no income in 2008, 2009 or 2010. In addition, Lodge has not made a mortgage payment since 2008 and it has not paid its real property taxes. First Financial holds a first position security interest in Lodge's condominium units and asserts that as of Lodge's petition date, it was owed $8,287,176.56. SEC Realty is owed $1,775,000, which amount is secured by a second position deed of trust in Lodge's condominium units. Madison County's Proof of Claim shows Lodge owes $383,862.85 in real property taxes for years 2008, 2009 and the first half of 2010. Although Lodge has not made a payment since 2008 to either of the first and second position lien creditors, and although Lodge has not paid its real property taxes, Lodge paid Quackenbush $10,000 on January 20, 2010. Lodge's bankruptcy attorney held $25,323.33 in trust as of September 14, 2010.

Management's schedules disclose that as of the petition date, Management had assets valued at $567,431.45, which amount includes of $503,114.71 of cash or cash equivalents and a

security deposit of $20,000 with ABACO Energy Services. Management lists $120,041.30 of debts. Management discloses in the Statement of Financial Affairs that its gross income was $1,106,162.66 in 2010; $1,069,690 in 2009; and $1,046,404 in 2008. Management transferred $70,730.85 to Altitudes in 2010. Altitudes is an entity owned solely by Quackenbush. Management also distributed a total of $219,680 to Quackenbush between November 4, 2009, and November 14, 2010. Of the forgoing amount, $130,000 was distributed to Quackenbush on Management's petition date, September 14, 2010. Management's attorney held $12,886 in trust as of September 14, 2010. Neither Management nor Lodge have taken any action to recover any of the monies paid to Quackenbush or Altitudes.

## APPLICABLE LAW and DISCUSSION

**1. Lodge and Management's Motions of Substantive Consolidation**

When certain demanding standards are satisfied, the equitable doctrine of substantive consolidation permits a court in the bankruptcy cases of related debtor entities to disregard the separateness of the entities and consolidate and pool the debtors' assets and liabilities into a single fund from which all claims are extinguished as though they were held and incurred by one entity. *See Union Sav. Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.)*, 860 F.2d 515, 518 (2nd Cir. 1988). "Substantive consolidation 'enabl[es] a bankruptcy court to disregard separate corporate identities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation.'" *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir. 2000) (quoting *James Talcott, Inc. v. Wharton (In re Continental Vending Machine Corp.)*, 517 F.2d 997, 1000 (2nd Cir. 1975) *cert. denied*, 424 U.S. 913 (1976)). Without substantive consolidation, debtors could isolate assets

through inter-company transfers among shell corporations. *Id*. If substantive consolidation is approved, inter-company claims and guarantees are eliminated, the assets and liabilities of the consolidated entities are pooled into a common fund, and the creditors of the consolidated entities are combined for purposes of voting on reorganization plans. *See Augie/Restivo,* 860 F.2d at 518.

Whether to order substantive consolidation involves a fact-intensive inquiry on a case-by-case basis. *See Bonham*, 229 F.3d at 765. Due to the highly fact-specific nature, no specific scorecard method exists to decide whether the doctrine should be applied. *In re Owens Corning*, 419 F.3d 195, 210-11 (3rd Cir. 2005), *cert. denied*, 126 S.Ct. 1910 (2006). Rather, courts have traditionally used a multifactor list of elements in determining whether to approve substantive consolidation. Two "similar but not identical" tests have emerged to assess whether substantive consolidation is proper. *Bonham*, 229 F.3d at 765. The Ninth Circuit has adopted the *Augie/Restivo* test developed by the Second Circuit, which requires the consideration of two "critical factors" to determine whether substantive consolidation is appropriate: (i) whether creditors dealt with entities as a single economic unit and did not rely on their separate identity in extending credit or (ii) whether the affairs of the debtors are so entangled that all creditors will benefit because untangling is either impossible or so costly as to consume the debtors' assets. *Id.* at 766 (adopting the Second Circuit's *Augie/Restivo* test and noting that the *Augie/Restivo* approach is "more grounded in substantive consolidation and economic theory [and] more easily applied" than tests used by other courts); *In re Cent European Indus. Dev. Co. LLC*, 288 B.R. 572, 576 (Bankr. N.D. Cal. 2003) (noting that the court "is bound to follow [*Bonham*]" in its determination of whether substantive consolidation is appropriate). Under this test, the presence

of either factor may be a sufficient basis to order substantive consolidation. *Bonham*, 229 F.3d at 766.

Applying the clear legal analysis established by the Second Circuit and adopted by the Ninth Circuit, this Court finds that Debtors have established the existence of both *Augie/Restivo* factors. The evidence shows that all creditors, with perhaps the exception of Saunders Outdoor Advertising, believed that the condominium units were owned and operated by Lodge. In other words, creditors perceived Lodge and Management as a single economic unit. *See Augie/Restivo*, 860 F.2d at 518-19 ("creditors who make loans on the basis of the financial status of a separate entity expect to be able to look to the assets of their particular borrower for satisfaction of that loan. Such lenders structure their loans according to their expectations regarding that borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets").

Moreover, other than the distinction that exists between Lodge and Management with the Secretary of State and in Quackenbush's unwritten management agreement, the business functions of Lodge and Management are so hopelessly intertwined that it is impossible to treat Lodge and Management as two separate entities. The bankruptcies of Lodge and Management must be substantively consolidated. Accordingly, the motions of the Debtors to substantively consolidate Case Nos. 10-62229 and 10-62230 are granted.

### 2. Lodge's Motion to Reject Executory Contract

The Court's decision to substantively consolidate Lodge and Management's bankruptcy cases renders moot the pending Motion to Reject Executory Contract wherein Lodge seeks to reject the unwritten management agreement that purportedly exists between Lodge and

Management.

        3.        **First Financial's Motion for Adequate Protection**

First Financial seeks an order directing Lodge to make adequate protection payments to First Financial in an amount sufficient to pay the past due real property taxes along with any other amounts necessary to protect First Financial's interest. Section 363(e) provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property (to the exclusion of such property being subject to an order to grant relief from the stay under section 362).

What constitutes adequate protection is not defined in the Bankruptcy Code. However, "11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent." *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984). This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture*, 106 B.R. 215, 219-20 (Bankr. D. Mont. 1989):

> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., (In re Timbers of Inwood Forest Assocs., Ltd.)*, 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the

collateral when it erodes the allowed secured claim.')."

[*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr. W.D. Mich. 1988)]

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed. 1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95-595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I.*, Ltd., 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), *aff'd*, 738 F.2d 951 (8th Cir.1984)."

*See also In re Farmer,* 257 B.R. 556 (Bankr. D. Mont. 2000) (discussing adequate protection and the calculation thereof).

In *Mellor* the Ninth Circuit Court of Appeals recognized that an "equity cushion", while not specifically mentioned in the Bankruptcy Code, is a common form of adequate protection:

> [I]t is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Curtis*, 9 B.R. at 112. In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection. *In re San Clemente Estates*, 5 B.R. 605, 610 (B.Ct.S.D.Cal.1980); *In re Tucker*, 5 B.R. 180, 182 (B.Ct.S.D.N.Y.1980); 2 COLLIER ON BANKRUPTCY, § 361.02[3] at 361-9; (15th ed. 1979). A sufficient equity cushion has been found to exist although not a single mortgage payment

9

had been made. *In re Curtis*, 9 B.R. at 111.

*Id*. *See also In re Interstate Distrib. Co., Inc.*, 13 Mont. B.R. 86, 89-90 (D. Mont. 1993) (Recognizing that an equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the Bankruptcy Code.)  The *Mellor* Court defined the term "equity cushion" as "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during time the automatic stay remains in effect." *Id.* at 1400 n.2.

The evidence in the case *sub judice* clearly shows that Lodge has no equity in its 85 condominium units.  The evidence also shows that Lodge has not made any payments to First Financial for quite some time and Lodge has not paid the real property taxes on the condominium units since 2008.  Nevertheless, Management has amassed in excess of $500,000 in its coffers and Quackenbush has distributed large sums of money to himself.  Such facts clearly establish that First Financial is entitled to the adequate protection it requests, which is Lodge's immediate payment of the past due property taxes.

      4.      **The United States Trustee's Motions.**

The UST has filed a motion to dismiss or covert in the Lodge bankruptcy and has filed a motion to appoint a trustee in the Management bankruptcy.  The Court's decision to consolidate the bankruptcies of Lodge and Management necessarily impacts the UST's motions in various ways.  Such decision also impacts how the Debtors will proceed going forward.  Lodge has filed a proposed Chapter 11 plan; Management has not.  To proceed, the Debtors will now have to file a consolidated Chapter 11 plan.  This Court deems it appropriate to hold the UST's pending

motions, together with First Financial's joinder thereto, in abeyance to afford the Debtors fourteen days to file a consolidated Chapter 11 plan. The Debtors' consolidated Chapter 11 plan will allow this Court to better evaluate the UST's pending motions. The Court would note that several items are of great concern to the Court. For example, the Court agrees with the UST that Quackenbush may not be the proper person to have directing the Debtors' activities, particularly where Quackenbush took in excess of $225,000 from the Debtors in the twelve months leading up to the Debtors' bankruptcy petition date.[1] However, as stated above, the Court would like the opportunity to review a consolidated Chapter 11 plan to see if the Debtors' have any reasonable prospect of moving forward under Quackenbush's direction. Accordingly, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Debtors' Motions for Substantive Consolidation filed November 16, 2010, at docket entry no. 26 in Case No. 10-62229 and docket entry no. 30 in Case No. 10-62230, are GRANTED; and the two aforementioned bankruptcies are substantively consolidated, with Case No. 10-62229 designated as the lead case.

IT IS FURTHER ORDERED that First Financial's Motion for Adequate Protection filed December 30, 2010, at docket entry no. 41 in Case No. 10-62230 is deemed withdrawn.

IT IS FURTHER ORDERED that The Lodge at Big Sky, LLC's Motion to Reject Executory Contract filed February 1, 2011, at docket entry no. 60, is DENIED as moot given the substantive consolidation of Case Nos. 10-62229 and 10-62230.

IT IS FURTHER ORDERED that First Financial Bank, N.A.'s Motion for Adequate

---

[1] Said amount does not include the $70,730.85 that Management transferred to Altitudes in 2010.

Protection filed December 23, 2010, at docket entry no. 34 in Case No. 10-62229, is GRANTED; and the Debtors shall immediately pay the past due property taxes due and owing to Madison County.

IT IS FURTHER ORDERED that Debtors shall have fourteen (14) days from the date of this Order to file a consolidated Chapter 11 Plan; and the Court will hold the United States Trustee's Motion to Dismiss filed January 20, 2011, at docket entry no. 51 in Case No. 10-62229, the United States Trustee's Motion to Convert to Case Under Chapter 7 filed January 20, 2011, at docket entry no. 52 in Case No. 10-62229, and First Financial Bank, N.A.'s Joinder in the United States Trustee's Motion to Dismiss or in the alternative, to Convert to Case Under Chapter 7, in abeyance pending expiration of the above-referenced 14-day period.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana